**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| FRANKLIN D. MORRIS, JR. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  21-3723 |
| | ) | |
| CHICAGO CENTRAL PACIFIC RAILROAD | ) | |
| COMPANY d/b/a CANADIAN NATIONAL | ) | |
| RAILROAD, ILLINOIS CENTRAL RAILROAD | ) | Judge: |
| COMPANY, d/b/a CANADIAN NATIONAL | ) | |
| RAILROAD, and CANADIAN NATIONAL | ) | Magistrate Judge: |
| RAILROAD/CN TRANSPORTATION LIMITED | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF AND**
**JURY DEMAND**

Plaintiff, FRANKLIN D. MORRIS, JR., ("Morris" or "Plaintiff") by counsel, brings his

Cause of Action against the above-named Defendants, CHICAGO CENTRAL & PACIFIC

RAILROAD COMPANY d/b/a CANADIAN NATIONAL RAILROAD, (hereinafter, "CCP"),

ILLINOIS CENTRAL RAILROAD COMPANY, d/b/a CANADIAN NATIONAL RAILROAD,

(hereinafter, "IC"), and CANADIAN NATIONAL RAILROAD/CN TRANSPORTATION

LIMITED, (hereinafter, "CN"), stating as follows:

**NATURE OF THE ACTION**

1.      This is a civil action against the Canadian National Railroad and its operating units,

IC and CCP, for declaratory, injunctive, and monetary relief for damages Plaintiff Franklin Morris

has sustained as a result of the Defendants' racial discrimination, harassment, and retaliation

against him, all in violation of 42 U.S.C. § 1981 ("Section 1981"). The discriminatory and

retaliatory treatment to which the Defendants subjected Mr. Morris is part of the Company's

longstanding practice of maintaining racial discrimination, harassment, and retaliation in the workplace.

2.       Plaintiff brings this action under 42 U.S.C. § 2000e *et seq.* ("Title VII") and 42 U.S.C. §§ 1981, and Civil Rights Act of 1991, to correct unlawful employment practices on the basis of race and to provide appropriate relief to Plaintiff, who was subjected to racial discrimination, retaliation, harassment with different terms and conditions of employment by his employer, CCP, IC AND CN.

3.       This action is also brought under the Family Medical Leave Act, 29 U.S.C.A. § 2615, et seq.

## JURISDICTION AND VENUE

4.       This court has jurisdiction under 28 U.S.C. §§ 451, 1331 and 1343. Venue in this district is proper because the unlawful employment practices alleged below occurred, and all parties reside, in Cook County, Illinois, a county within the jurisdiction of the United States District Court for the Northern District of Illinois, Eastern Division.

5.       All conditions precedent to the institution of this lawsuit have been fulfilled, including receipt of "Dismissal and Notice of Rights" letters from the Equal Employment Opportunity Commission ("EEOC"). Plaintiff filed his original charge of discrimination #440-2021-01925 on April 6, 2021. (Exhibit "A").

6.       The EEOC issued a "Dismissal and Notice of Rights" on or about April 13, 2021. (See Exhibit "B")

7.       Plaintiff received a copy of the "Dismissal and Notice of Rights" form on April 16, 2021, and thus, his filing is timely.

## THE PARTIES

2

8.      Morris is a citizen of the United States and the State of Illinois and resides in the city of Matteson, Cook County, Illinois.

9.      Defendants, IC and CCP are foreign corporations registered to do business in the State of Illinois and have its principal offices in Homewood, in the state of Illinois, in this judicial district. IC and CPP are operating units and/or subsidiaries of the "CN." At all times relevant to this Complaint, CPP, IC and/or CN was Mr. Morris's employer. ("hereinafter, "the Company")

10.     CCP, IC, and CN are "employers" as that term is defined under the relevant statutes, including Title VII, 42 U.S.C. 2000e(b).

## STATEMENT OF FACTS

11.     Plaintiff, Morris, is a 52-year-old African American male who has been employed with the Defendant for fifteen, (15), years. However, since testifying in a federal discrimination lawsuit five years ago, he has continuously been subject to unwarranted criticism, harassment, discipline, discrimination, retaliation, and interference with medical leaves.

12.     Morris is black or African American, and as such, is a member of a protected class.

13.     At all relevant times Plaintiff has been an employee, as defined for purposes of Title VII, of the CPP, IC and/or CN was and has served as an "Engineer."

14.     At all relevant times, Morris has been a member of the International Brotherhood of Locomotive Engineers and Trainmen. ("Union")

15.     At all relevant times, MORRIS's employment relationship with the Company, has been governed by a Collective Bargaining Agreement entered into between the Union and the Company.

16.     Due to race and gender discrimination, Morris was repeatedly singled out, investigated, and disciplined for false violations of rules and policies and dereliction of duty.

17.     Plaintiff's colleagues, not in the protected class, did not get singled out, investigated, and disciplined for false violations of rules and policies and dereliction of duty and/or receive similar mistreatment.

18.     Plaintiff was the subject of ongoing harassment and adverse employment actions that significantly altered the terms and conditions of his employment.

19.     On numerous occasions, Plaintiff complained of the unfair and discriminatory treatment to his superiors, including co-workers, and during grievance hearings, to no avail.

20.     He has experienced constant and continuous harassment and hostility in the workplace dating back to 2016 to the present.

21.     His complaints about this harassment, mistreatment, and discrimination, to management were ignored.

22.     Additionally, after receipt of a deposition subpoena issued in the litigation entitled _Solomon Perry v. Illinois Central Railroad Co_., filed in the United States District Court, Northern District of Illinois, 1:14-cv-00756, and for which he lawfully and truthfully testified about discrimination occurring at the Company, in retaliation for his testimony and reporting of unlawful conduct, Defendants, by and through its employees, intentionally subjected Morris to different duties, requirements, restrictions, and disciplinary action.  After testifying, he was consistently targeted in all types of false infractions.

23.     Specifically, in September of 2014, Morris was subpoenaed by attorneys employed by Soloman Perry, a conductor employed by CN, with respect to a discrimination lawsuit against the company.

24.     Prior to taking the oath, Morris advised them that he did not want to testify for fear of retaliation from the Company.

25.      Morris was asked to testify on Solomon's behalf about what Morris had observed with respect to widespread discrimination at the Company.

26.     Exactly six months after he testified the harassment began.  Between February of 2015 and July of 2015 there were five unfounded investigations launched against him.

27.     In February of 2015 he was suspended for forty-five (45) days.

28.     In December of 2016, the 2015 suspension issue went to arbitration and an award was entered in favor of Morris and against CN, the arbiters finding the Morris was not at fault and he was awarded backpay for the days he was off work due to the suspension.

29.     In July of 2015, Morris was terminated for two years and three months.

30.     Once the arbitration of this issue was conducted in May of 2017, the arbiters again found in favor of Morris, and he was awarded backpay for two years and three months and the false discipline was cleared from his record.  He was also awarded his job and his seniority.

31.     Since that time, the Company has increased its harassment and discrimination against Plaintiff in an effort to punish his conduct and/or drive him from his position.

32.     This treatment has been continuous, pervasive, and unrelenting.

33.     This treatment and course of conduct has continued and constitutes a pattern and practice of discrimination over the course of his employment and continuing to this day.

34.     Defendants' discriminatory treatment is evidenced in numerous ways.

35.     After his return to service in September of 2017 the retaliation, racism and discrimination continued.

36.     He was the subject of discrimination with training standards. For example, when an employee is off for a certain amount of time, employees are allowed "familiarization trips" to make certain that employees are aware of changes to systems and making certain that are aware of the assigned territory.  The average amount of time for this process is a month to two months.

37.      In September 2017, Morris and another engineer returned to service at the same time.  He was Caucasian and was given almost two months to participate in "familiarization trips" but Morris was only given five, (5) days.  Morris' requests for the additional training period was denied.

38.      In December of 2018 Morris was charged with another incident and asked to complete an incident report. His train's black box was also downloaded.  No rule violations were found. He was then injured on a defective repair of an air hose in the locomotive cab.

39.     After his injury, the Company found him at fault for the incident and he was given a (fifteen), 15, day suspension. Two of his Caucasian co-workers had the same incidents, with more damage to cars, and were not even required to complete an incident report. His fifteen, (15), day suspension went to arbitration hearing May 2020 and the arbiters found in his favor again. He was awarded backpay and the discipline was to be cleared from his record.

40.     Another incident involved training on a new system called the "Positive Train Control (PTC)" which is a requirement for all engineers.  The Engineers were required to receive 60 miles of training for qualification.

41.     Morris was not given 60 miles, only 17 miles using the new PTC system.  Even though Morris reminded supervision that he was not yet qualified, having recently less than 20 miles of training, he was forced to take the train.

6

42.     Within 40 miles of his trip, the train was found to be exceeding speed restrictions due to Morris' lack of knowledge of the speed restrictions, not knowing that such speed restrictions were not on his PTC or not even in any instructions that he could study. Morris reluctantly signed off on the claimed violation due to his fear that he would get suspended for more than 30 days.

43.     On January 6, 2021, Morris' conductor and he completed a Procurement test and Morris was advised by his supervisor that "we did not complete a proper procurement test." Morris was again placed under investigation.

44.     At Morris' hearing on January 22, 2021, he questioned why he and not the conductor (Caucasian) was under investigation or questioned with respect to the incident as the alleged infraction is the responsibility of the conductor, not the engineer. No response was provided. (This claim is pending arbitration).

45.     On January 20, 2021, Morris' conductor and he were working in Freeport and the conductor "lined the switch against me" that caused me to go on the ground. The conductor told Morris' supervisor that it was his (conductor's) fault and Morris had nothing to do with it.

46.     Despite Morris fully complying with all rules and policy, CN would not allow the conductor to admit it was his fault.

47.     On January 23, 2021, Morris was placed on suspension pending investigation while his conductor, who was part of both of these incidents, remains working to this day. (This claim is also pending arbitration).

48.     By his own calculation, since January of 2015, his in-service time, (actual time worked) is only 22 months. During his in-service time, he has been subject to 9 investigations, which averages one (1) investigation every 2 months and 3 weeks. Further, Morris was terminated for 2 years and 6 months and on disability for 11 months.

49.     In addition to experiencing all of these challenges he has been injured twice while in service.  In December of 2018 while in service a piece of equipment hit him in the head. He called out on the radio that he was hurt and needed medical assistance.  Instead of the company calling an ambulance they called a cab to take him to the hospital.  He was diagnosed with a severe concussion and was off work for 5 months.

50.     Finally, in January 2020 he was taking his train to Dubuque, Iowa when his engine hit a loaded truck illegally parked on the track and he received his second concussion and hurt both his hands in the process.  He was on disability until May 2020.  He was supposed to have surgery on my hands before returning to work, but due to COVID-19 his surgery was cancelled.

51.     On January 28, 2021, he went to his primary physician regarding pain in his right hand and his inability to grip.  After a thorough examination, his physician placed him on disability and provided him with orders for his employer that specified that he could not grip, nor climb or lift heavy equipment beginning January 31, 2021.

52.     On January 31, 2021, Morris called the "call-off" line at CN to let them know that he was going to be on medical leave until further notice.

53.     On February 5, 2021, CN called and said he was suspended for 60 days per an investigation that was done on January 22, 2021.  Morris explained to them that he was on medical leave by order of his physician.  CN asked him to send them his physician information. After reviewing the paperwork, he was advised that he was on medical leave until further notice.

54.     On April 3, 2021, one of my coworkers called Morris and asked if he had returned to work because he said Morris was "marked up" and that he was bumped off his job that Morris held before he went off duty for injury.

55.     Morris explained to his co-worker that he was still on medical leave. His co-worker advised that he knew that but wanted to make sure.

56.     Although company procedure involves notifying an employee when the job is marked up or an employee's job changes, the employee receives a call to alert you to any change.

57.     Morris did not receive any calls or notifications.

58.     Additionally, Morris was marked as "AWOL" in the system.

59.     On April 5, 2021, he was finally able to reach someone in the Company who advised that he had been on suspension for the past sixty, (60), days.

60.     Morris explained to them that he was on medical leave.

61.     The Company told him that he had not sent the proper paperwork to them.

62.     Morris explained to them that FMLA paperwork was not sent to him after he notified them of his need for FMLA leave so he downloaded the paperwork off of CN's website. He was told that it was the wrong paperwork.

63.     The Company was unable to explain why, if the wrong paperwork was submitted in February that he was not notified.

64.     Morris went to his physician's office on April 6, 2021, to have them complete the paperwork that was emailed me from the Company.  The paperwork was completed and faxed to CN'S FMLA fax number and also emailed.

65.     Morris also called MetLife and the RRB office and asked them to verify the procedure for having his disability claims paid.  MetLife and RRB representatives advised that prior to sending any check to him, they would verify with the Company that he was still on medical leave. The Company verified that fact each time checks were sent, beginning back in February of 2021.

66.     Despite being on known medical leave, the Company put him into investigation to attempt to terminate him on April 7, 2021, with the investigation scheduled for the very next week.

67.     Morris advised his union representative to postpone the investigation until his medical leave was over and he returned to active duty.

68.     The Company advised Morris that they would postpone the hearing until April 22, 2021, because unless he could not "come and sit down at an investigation" they were going to still conduct it.

69.     Morris advised his union representative that he had surgery scheduled for April 22, 2021, and would not be available.

70.     Morris reached out to Human Resources to notify them that he was being harassed while on medical leave and a representative confirmed that he was on medical leave until his physicians released him to return to work.

71.     Morris possesses documentation, including email correspondence confirming his medical leave status.

72.     By its actions, the Company unlawfully interfered with Plaintiff's rights under the FMLA in retaliation for Morris' protected activity under Title VII.

73.     Morris has been damaged by the Company's illegal conduct.  Morris has retained the services of undersigned counsel and has agreed to pay said counsel reasonable attorneys' fees.

74.     Such ongoing discriminatory and retaliatory conduct is subject to injunctive action to stop further violations.

75.     Due to the conduct of the Company, and its agents, Plaintiff's reputation, image, finances, and health has been materially affected, including, but not limited to medical treatment for a number of stress related physical and mental conditions.

## COUNT I:  TITLE VII DISCRIMINATION

76.     Plaintiff re-alleges and incorporates by reference the factual allegations of paragraphs 1 through 75 above, as if fully set forth herein.

77.     Since as early as 2015, and as late as 2021, Defendants and its employees, have engaged in unlawful employment practices in violation of Title VII.

78.     The Company, its upper management, and its employees illegally discriminated against Morris based on his race with respect to the terms and conditions of his employment when it subjected him to different terms and conditions than other non-protected class members.

79.     The Company illegally discriminated against him by did not get singled out, investigated, and disciplined for false violations of rules and policies and dereliction of duty and/or receive similar mistreatment.

80.     The Company illegally discriminated against him as identified above.

81.     The Company's employment practices, and conduct were deliberate, willful, and conducted in blatant disregard of Plaintiff's rights.

82.     The Company's policies and practices have produced, *inter alia*, disparate treatment and disparate impact against Plaintiff based on his race with respect to the terms and conditions of his employment.

83.     By reason of the Company's discriminatory practices, Plaintiff is entitled to all legal and equitable remedies available under Title VII.

84. The Company's discrimination against Plaintiff based on his race was sufficiently severe and pervasive to alter the conditions of Plaintiff's employment and create a hostile working environment.

85. The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and promotion, to effectively constrain Plaintiff, and otherwise to adversely affect Plaintiff's status as an employee because of his race, African American.

86. The Company at all relevant times acted with malice or reckless indifference to the federally protected rights of Plaintiff in violation of 42 U.S.C. § 1981(a).

87. As a result of the aforementioned intentionally discriminatory acts of the Company, Plaintiff has suffered and will likely continue to suffer grievous harm including, without limitation, substantial loss of income and benefits, loss of earnings potential, loss of enjoyment of life, and emotional distress.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, FRANKLIN MORRIS, demands judgment against Chicago Central & Pacific Railroad Company D/B/A Canadian National Railroad, Illinois Central Railroad Company, D/B/A Canadian National Railroad, and Canadian National Railroad/CN Transportation Limited, in an amount in excess of $250,000.00, and for all legal and equitable relief available pursuant to Title VII and the Civil Rights Act of 1991, including promotion, attorneys' fees, litigation expenses and cost of suit.

(a) Enjoining and permanently restraining these violations;

(b) Directing Defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful practices are eliminated and do not continue to affect Morris' employment opportunities;

(c) Awarding Morris compensatory damages for his emotional distress and humiliation;

(d)     Awarding Morris punitive damages if available against these defendants;

(e)     Awarding Morris prejudgment and post-judgment interest, as well as reasonable attorney's fees and costs of this action;

(f)     Awarding Morris damages relating to adverse tax consequences, and

(g)     Awarding such other and further relief as the Court deems necessary and proper.

## COUNT II:  TITLE VII RETALIATION

88.     Plaintiff re-alleges and incorporates by reference the factual allegations of paragraphs 1 through 75 above, as if fully set forth herein.

89.     Plaintiff engaged in a protected activity when he complained of discrimination and further, when he testified as a witness in federal litigation alleging race-based discrimination, harassment, and retaliation.

90.     The conduct complained of by Plaintiff involved his supervisors and administrators, as defined in Title VII.

91.     These supervisors and administrators, by their actions, harassed, discriminated, and retaliated against Plaintiff and altered the terms and conditions of his employment in retaliation for having complained and having complained of discrimination and/or filing an EEOC charge.

92.     As a result of the retaliation described above, Plaintiff suffered, and will likely continue to suffer, grievous harm including, without limitation, substantial loss of income, loss of earnings potential, loss of enjoyment of life and severe emotional distress.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, FRANKLIN MORRIS, demands judgment against Chicago Central & Pacific Railroad Company D/B/A Canadian National Railroad, Illinois Central Railroad Company, D/B/A Canadian National Railroad, and Canadian National Railroad/CN

Transportation Limited, in an amount in excess of $250,000.00, and for all legal and equitable relief available pursuant to Title VII and the Civil Rights Act of 1991, including promotion, attorneys' fees, litigation expenses and cost of suit.

    (a)    Enjoining and permanently restraining these violations;

    (b)    Directing Defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful practices are eliminated and do not continue to affect MORRIS 's employment opportunities;

    (c)    Awarding Morris compensatory damages for his emotional distress and humiliation;

    (d)    Awarding Morris punitive damages if available against these defendants;

    (e)    Awarding Morris prejudgment and post-judgment interest, as well as reasonable attorney's fees and costs of this action;

    (f)    Awarding Morris damages relating to adverse tax consequences, and

    (g)    Awarding such other and further relief as the Court deems necessary and proper.

## COUNT III:   HOSTILE WORK ENVIRONMENT

93.    Plaintiff re-alleges and incorporates by reference the factual allegations of paragraphs 1 through 75 above, as if fully set forth herein.

94.    Since as early as 2015, and as late as 2021, Defendants and its employees, have engaged in unlawful employment practices in violation of 42 U.S.C. §1981.

95.    The Company illegally discriminated against Plaintiff based on his race with respect to the terms and conditions of his employment when it subjected him to different terms and conditions than other non-protected class members.

96.    The Company, and its employees illegally discriminated against him by engaging in and/or allowing a course of offensive and harassing conduct to exist in the work environment for years, up an until the present.

97.     The Company, and its employees illegally harassed Morris to the point that it became a condition of his continued employment and was severe and pervasive.

98.     As identified, the offensive conduct and harassment has included jokes, slurs, epithets, and/or name calling, intimidation, ridicule or mockery, insults or put-downs, and interference with work performance.

99.     This harassment and resulting hostile work environment was based upon his race and was both subjectively and objectively hostile and severe and pervasive enough to interfere with Morris' ability to perform his job.

100.    The Company, and its employees, despite complaints made by Morris and others, failed to take any steps to remedy the harassment and illegal conduct committed by the defendants and co-workers.

101.    By reason of the Company's discriminatory practices, Plaintiff is entitled to all legal and equitable remedies available under Title VII.

102.    The Company's discrimination against Plaintiff based on his race was sufficiently severe and pervasive to alter the conditions of Plaintiff's employment and create a hostile working environment.

103.    The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and promotion, to effectively constrain Plaintiff, and otherwise to adversely affect Plaintiff's status as an employee because of his race, black or African American.

104.    The Company, at all relevant times acted with malice or reckless indifference to the federally protected rights of Plaintiff in violation of 42 U.S.C. § 1981(a).

105.    As a result of the aforementioned intentionally discriminatory acts of the Company, Plaintiff has suffered and will likely continue to suffer grievous harm including, without

limitation, substantial loss of income and benefits, loss of earnings potential, loss of enjoyment of life, and emotional distress. Specifically, due to the stress and anxiety caused by the Company's discriminatory conduct, Plaintiff has been forced to incur medical treatment and expenses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, FRANKLIN MORRIS, demands judgment against Chicago Central & Pacific Railroad Company D/B/A Canadian National Railroad, Illinois Central Railroad Company, D/B/A Canadian National Railroad, and Canadian National Railroad/CN Transportation Limited, in an amount in excess of $250,000.00, and for all legal and equitable relief available pursuant to Title VII and the Civil Rights Act of 1991, including promotion, attorneys' fees, litigation expenses and cost of suit.

(a) Enjoining and permanently restraining these violations;

(b) Directing Defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful practices are eliminated and do not continue to affect MORRIS 's employment opportunities;

(c) Awarding Morris compensatory damages for his emotional distress and humiliation;

(d) Awarding Morris punitive damages if available against these defendants;

(e) Awarding Morris prejudgment and post-judgment interest, as well as reasonable attorney's fees and costs of this action;

(f) Awarding Morris damages relating to adverse tax consequences, and

(g) Awarding such other and further relief as the Court deems necessary and proper.

## COUNT IV: SECTION 1981 DISCRIMINATION

106. Plaintiff realleges and incorporates by reference the factual allegations of paragraphs 1 through 75 above, as if fully set forth herein.

107.     Pursuant to Civil Rights Act of 1871, 42 U.S.C. § 1981, ("Section 1981") it is unlawful to discriminate in contracts, including employment contracts, on the basis of race.

108.     Plaintiff always met or exceeded the expectations of his employer as a performed his duties as engineer with the Company, and was qualified for his position, any advancements, any promotions, and more favorable assignments to one or more additional positions.

109.     Since as early as 2015, and continuously so since then, and until the present time, the Company has engaged in unlawful employment practices in violation of 42 U.S.C. § 1981.

110.     The Company, and its management and employees illegally discriminated against Plaintiff based on his race with respect to the terms and conditions of his employment when it subjected him to different terms and conditions than other non-protected class members.

111.     The Company discriminated against him by failing to provide necessary coursework materials, supplies and tools.

112.     The Company illegally discriminated against Morris as identified above.

113.     The Company's policies, actions, practices, and conduct were deliberate, willful, and conducted in blatant disregard of Plaintiff's rights.

114.     The Company's actions, policies and practices have produced, *inter alia*, disparate treatment and disparate impact against Plaintiff based on his race with respect to the terms and conditions of his employment.

115.     The Company engaged in a course of conduct over the years equating to a policy and custom of discriminatory conduct, and also, condoned such conduct by the Company and its employees.

116.     By reason of the Company's discriminatory practices, Plaintiff is entitled to all legal and equitable remedies available under 42 U.S.C. § 1981.

117.    The Company's discrimination against Plaintiff based on his race was sufficiently severe and pervasive to alter the conditions of Plaintiff's employment and create a hostile working environment. The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and promotion, to effectively constrain Plaintiff, and otherwise to adversely affect Plaintiff's status as an employee because of his race, black or African American.

118.    The Company at all relevant times acted with malice or reckless indifference to the federally protected rights of Plaintiff in violation of 42 U.S.C. § 1981(a).

119.    As a result of the aforementioned intentionally discriminatory acts of the Company, Plaintiff has suffered and will likely continue to suffer grievous harm including, without limitation, substantial loss of income and benefits, loss of earnings potential, loss of enjoyment of life, and severe emotional distress.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, FRANKLIN MORRIS, demands judgment against Chicago Central & Pacific Railroad Company D/B/A Canadian National Railroad, Illinois Central Railroad Company, D/B/A Canadian National Railroad, and Canadian National Railroad/CN Transportation Limited, in an amount in excess of $250,000.00, and for all legal and equitable relief available through 42 U.S.C. § 1981, and Title VII and the Civil Rights Act of 1991, including promotion, attorneys' fees, litigation expenses and cost of suit.

(a)    Enjoining and permanently restraining these violations;

(b)    Directing Defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful practices are eliminated and do not continue to affect MORRIS 's employment opportunities;

(c)    Awarding Morris compensatory damages for his emotional distress and humiliation;

(d)      Awarding Morris punitive damages if available against these defendants;

(e)      Awarding Morris prejudgment and post-judgment interest, as well as reasonable attorney's fees and costs of this action;

(f)      Awarding Morris damages relating to adverse tax consequences, and

(g)      Awarding such other and further relief as the Court deems necessary and proper.

## **COUNT V:  FMLA Retaliation**

120.    Morris re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1- 75, above.

121.    Morris was an employee eligible for protected leave under the FMLA.

122.    The Company is and was an employer as defined by the FMLA.

123.    Morris exercised or attempted to exercise his rights under the FMLA.

124.    Defendant retaliated against Plaintiff for exercising or attempting to exercise his FMLA rights.

125.    Defendant's actions were willful, knowing, and voluntary, and otherwise done with malice and/or reckless indifference for Plaintiff's rights.

126.    Plaintiff was injured due to Defendant's willful violations of the FMLA, to which he is entitled to legal relief.

## **Count VI: FMLA Interference**

127.    Morris re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-75, above.

128.    Morris was an employee eligible for protected leave under the FMLA.

129.    The Company is and was an employer as defined by the FMLA.

130.    Morris exercised or attempted to exercise his rights under the FMLA.

131.    The Company interfered with Plaintiff's lawful exercise of his FMLA rights.

132.    The Company's actions were willful, knowing, and voluntary, and otherwise done with malice and/or reckless indifference for Plaintiff's rights.

133.    Morris was injured due to Defendant's willful violations of the FMLA, to which he is entitled to legal relief.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, FRANKLIN MORRIS, demands judgment against Chicago Central & Pacific Railroad Company D/B/A Canadian National Railroad, Illinois Central Railroad Company, D/B/A Canadian National Railroad, and Canadian National Railroad/CN Transportation Limited, and requests this Honorable Court:

a)  Enter judgment requiring Defendants to pay back wages and back benefits found to be due and owing at the time of trial, front-pay, compensatory damages, including emotional distress damages, in an amount to be proved at trial, punitive damages, and prejudgment interest thereon;

b)  Grant Plaintiff his costs and an award of reasonable attorneys' fees (including expert witness fees); and

c)  Award any other and further relief as this Court deems just and proper.

## Count VII- Violations of the American with Disabilities Act

134.    Plaintiff incorporates paragraphs 1-75 as if fully set forth herein.

135.    Plaintiff had a known medical disability requiring him to be off of work, per physician orders.

136.    Plaintiff was unlawfully discriminated against on the basis of his disability in the terms and conditions of his employment by (among other things):

a)  being subjected plaintiff to higher levels of scrutiny than similarly

20

situated, non-disabled employees;

b)  failing and refusing, despite knowledge of the plaintiff's disability and the nature of the accommodations required, to provide reasonable accommodations for plaintiff so as to address any investigation hearings while still on leave;

c)  subjecting plaintiff to a higher level of disciplinary scrutiny than similarly situated non-disabled employees;

d)  penalizing plaintiff for requesting leave and/or for requesting accommodations or restrictions;

e)  treating non-disabled similarly situated employees more favorably;

f)  attempting to terminate plaintiff's employment on the basis of the foregoing;

g)  failing to accommodate plaintiff by extending and/or delaying hearings until his FMLA/disability leave had ended;

137.  As a result, Plaintiff was denied full and equal treatment because of his disability.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, FRANKLIN MORRIS, demands judgment against Chicago Central & Pacific Railroad Company D/B/A Canadian National Railroad, Illinois Central Railroad Company, D/B/A Canadian National Railroad, and Canadian National Railroad/CN Transportation Limited, and requests this Honorable Court enter judgment in an amount that is fair and reasonable in the premises, plus costs of this action, liquidated damages per statute, attorneys' fees, and all other just and proper relief.

Respectfully submitted,

**/s/ Richard P. Long**
Richard Paul Long (#6210690)

## JURY DEMAND

Pursuant to Fed. R. Civ. Pro. 38, a trial by jury is hereby demanded on all triable issues herein.

Respectfully submitted,


**/s/ Richard P. Long**
Richard Paul Long (#6210690)
LONG │ MEIHOFER LLC
Illinois Office:
4906 Main St. Suite 101
Lisle, IL. 60532
Phone: 630-796-0799
Fax:  630-929-1324
Email: rpl@longmeihoferlaw.com
Attorneys for Plaintiff