UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FRANKLIN D. MORRIS, JR., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) <br> ) <br> CHICAGO CENTRAL PACIFIC ) <br> RAILROAD COMPANY d/b/a ) <br> CANADIAN NATIONAL RAILROAD, ) <br> ILLINOIS CENTRAL RAILROAD ) <br> COMPANY, d/b/a CANADIAN ) <br> NATIONAL RAILROAD/CN ) <br> TRANSPORTATION LIMITED, ) <br> ) <br> Defendants. ) <br> ) | 21 C 3723 <br><br> Judge Charles P. Kocoras |

**MEMORANDUM OPINION**

**CHARLES P. KOCORAS, District Judge:**

Plaintiff Franklin D. Morris, Jr., filed this suit against his employers, Defendants Chicago Central Pacific Railroad Company d/b/a Canadian National Railroad, Illinois Central Railroad Company, d/b/a Canadian National Railroad, and Canadian National Railroad Transportation Limited (collectively, "Railroad" or "Defendants") after he was subjected to multiple disciplinary proceedings after testifying in a separate Title VII discrimination case.

Morris brings claims alleging race discrimination under 42 U.S.C. § 2000e ("Title VII") or 42 U.S.C. § 1981, retaliation under Title VII, disability discrimination under the Americans with Disabilities Act ("ADA"), and violations of the Family and Medical Leave Act ("FMLA").

Before the Court is the Railroad's motion for summary judgment. For the following reasons, the motion is granted.

## BACKGROUND

Morris started his employment with the Railroad as a locomotive engineer on January 21, 2008. Morris states that throughout his employment, he and other Black employees were subjected to racial discrimination and disparate treatment. However, Morris's treatment worsened after he was subpoenaed to testify in a race discrimination case brought against Defendants by a former employee, Solomon Perry[1] ("*Solomon* Matter"). Morris was deposed in the *Solomon* Matter on September 30, 2014. Six months after the deposition, Morris began experiencing an increased level of harassment at work.

The parties dispute the exact conduct that could be considered the start of the harassment. However, they agree that on March 18, 2015, Morris was suspended for 45 days for failing to perform a Class III brake test. Morris appealed to the Public Law Board and the discipline was overturned on procedural grounds. Two weeks later, on

---

[1] *Solomon Perry v. Illinois Central Railroad Co., Mark Hightower, Louis Busch, and Kirk Carroll* 1:14-CV-00756

2

April 4, 2015, Morris was disciplined for attendance issues, and received a Letter of Reprimand from the Railroad after Morris signed a Waiver of Investigation.[2]

On July 11, 2015, Morris was again disciplined for attendance issues. This time, an investigation was conducted that resulted in the termination of Morris's employment. Morris appealed and the termination decision was overturned. Three days later, on July 14, 2015, Morris signed another Waiver of Investigation for what appears to be another issue tied to his attendance and was given a five-day deferred suspension. Ten days later, on July 24, 2015, the Railroad issued a Notice of Investigation concerning Morris's absences. Upon conclusion of the investigation, Morris was terminated once again from his employment on August 18, 2015, for his attendance issues. This decision was also appealed and overturned, and Morris was given a 20-day suspension instead. He returned to work in September 2017. Upon his return to work, Morris was given training to refamiliarize himself with his responsibilities. Morris received one week of training, which he alleges was less than a comparable white engineer who received two to three months of training. However, Morris could not identify the white engineer or provide critical details such as how long the white engineer worked for the Railroad, how long he was on leave, and the other routes the white engineer was re-qualified.

On November 14, 2018, a train Morris was conducting went into "emergency mode" after a knuckle on the train was fractured. On November 21, 2018, the Railroad

---

[2] The parties do not explain what a "Waiver of Investigation" is, but we assume that it waives the right to an investigation on a specific violation and operates as an admission of fault by the employee.

3

issued a Notice of Investigation in connection with the November 14, 2018 incident. As a result of the investigation, Morris was given a 15-day suspension. This decision was appealed and was also overturned by the Public Law Board. During his deposition, Morris testified that two other white engineers committed the same infraction (broken knuckles) but were not reprimanded. One of the incidents caused by the white engineer led to damage much more significant than that caused by Morris. Despite this, neither of the white engineers received any disciplined for the broken knuckle or the damage caused to the train.

    Shortly after the knuckle incident, Morris was injured at work. He was given a leave of absence from December 16, 2018, to March 23, 2019. The parties dispute whether Morris received training on a new mechanical system upon his return. On July 2, 2019, Morris signed another Waiver of Investigation after he was caught speeding. He was given a 30-day suspension. Morris states that two other co-workers, one of which was the son of superintendent Dennis Anderson, were also caught speeding but were not given the same level of discipline. The engineer on that train received a 15-day suspension after signing a Waiver of Investigation. The superintendent's son was not investigated and did not receive any discipline.

    In January 2020, Morris was injured again while on duty. He was given a leave of absence from January 5, 2020 to May 18, 2020. On January 6, 2021, Darrius Johnson, a conductor, and Morris were working together when Morris allegedly failed to perform a proper brake procurement test. Morris states that he performed the brake

test as instructed by Johnson. Both Morris and Johnson were sent home that day. Afterwards, Morris requested medical leave and was granted leave from January 7, 2021, to January 16, 2021. On January 11, 2021, the Railroad issued a Notice of Investigation concerning the handbrake test. After the investigation, Morris was given a 60-day suspension effective February 5, 2021, to April 5, 2021. This decision was also appealed to the Public Law Board, which reduced Morris's suspension to 30 days.

On January 20, 2021, Morris was investigated again after his train derailed after running through a track that was not properly lined up. Morris was removed from service that day, and on January 21, 2021, the Railroad issued a Notice of Investigation concerning the derailment incident. A hearing did not take place because Morris was out on medical leave. Ultimately, after some back and forth between Morris and the Railroad, the hearing was postponed indefinitely until Morris was cleared to return to work.

On February 11, 2021, Morris complained of race discrimination and retaliation to the ombudsman office. The complaint was forwarded to Duane Spears, a senior HR manager. The parties dispute whether Morris's complaint was investigated. The Railroad alleges that Spears started an initial investigation that was stopped because Morris was on leave whereas Morris states that he did not receive any sort of update on his complaint since the day after he filed it. The parties also dispute if this complaint was the first internal complaint of discrimination Morris made to the Railroad. The Railroad contends that it is, whereas Morris states that he met with Spears in 2014, and

5

that Spears was present when he was deposed about the discrimination in the *Solomon* matter.

When Morris returned to work on April 6, 2021, the Railroad's Occupational Health Services Department determined that Morris was medically unfit for an investigation. On April 21, 2021, the Railroad pulled Morris from the schedule because of his medical needs, further delaying the investigation. Since then, Morris has not returned to work.

Morris subsequently initiated this lawsuit, alleging wrongful race and disability discrimination, retaliation, hostile work environment, FMLA, and ADA claims. Defendants move for summary judgment on all claims.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). To defeat summary judgment, a nonmovant must produce more than a "mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018). The Court considers the entire evidentiary record and must draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). The Court does not "weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be

true." *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## DISCUSSION

### I. Waived Claims

Summary judgment is a seminal moment in a civil case's trajectory where a plaintiff must put meat on the bones of his complaint by providing the evidence he has gathered to support his claims. In other words, summary judgment is the time when Morris must "put up or shut up" and fight for the viability of his lawsuit. *Johnson v. Cambridge Indus. Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). Morris's response does none of this. Instead, Morris's response consists of emaciated arguments and a complete abandonment of several claims without explanation. Accordingly, summary judgment is granted as to Morris's FMLA and ADA claims due to Morris's failure to respond to Defendants' arguments regarding these claims. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (failure to respond to an argument results in waiver, and silence leaves courts to conclude that the silent party is making a concession). The Court will now consider the remaining claims that are subject to Defendants' motion for summary judgment.

## II. Time-barred Claims

Defendants' opening argument is that many of Morris's claims are time-barred because they are based on conduct that occurred outside of the applicable statute of limitations. We agree.

"Section 1981 claims are governed by a four-year statute of limitations, running from the date of the alleged unlawful activity to the date of filing of the lawsuit." *Johnson v. Johnson & Johnson*, 67 F. Supp. 3d 1001, 1009 (N.D. Ill. 2014) (citing *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004)). Plaintiff filed his complaint on July 13, 2021. *See* Dkt. # 1. Thus, Defendants argue that any Section 1981 claims that occurred more than four years before July 13, 2021, are barred.

Conversely, a Title VII claim must first be filed as a discrimination charge with the EEOC or a state agency within 300 days of the alleged misconduct. "The EEOC then gives the plaintiff notice of [his] right to sue, at which point the plaintiff has 90 days to file [his] lawsuit." *Taylor v. N.W. Mem'l. Hosp.*, 521 F. Supp. 3d 714, 715 (N.D. Ill. 2021) (citing *Bobbitt v. Freeman Cos.*, 268 F.3d 535, 538 (7th Cir. 2001)). Morris filed his administrative charge on April 6, 2021, thereby barring any claims that arose prior to June 10, 2020. The majority of the disciplinary actions took place outside of this statutory window.

Morris attempts to invoke the continuing violation doctrine to save his claims, arguing that the doctrine applies to the alleged violations that occurred outside of the

statute of limitations because these violations, taken as a whole, show that Morris was discriminated against because of his race.

"The continuing violation doctrine is best characterized as a doctrine governing the accrual of a claim." *Pitts v. City of Kankakee, Ill.*, 267 F.3d 592, 595 (7th Cir. 2001). "The doctrine applies when a tort involves a continued repeated injury and the limitation period does not begin until the date of the last injury or when the tortious act ceased." *Kovacs v. United States*, 614 F.3d 666, 676 (7th Cir. 2010) (cleaned up). The purpose of the doctrine is "to allow suit to be delayed until a series of wrongful acts blossoms into an injury on which suit can be brought." *Limestone Dev. Corp. v. Vill. of Lemont, Ill.*, 520 F.3d 797, 801 (7th Cir. 2008).

We find that the continuing violation doctrine does not apply to Morris's time-barred Section 1981 and Title VII claims because they are based on "[e]asy to identify" adverse employment actions that "do not warrant application of the continuing violation doctrine, as they are violations in and of themselves." *Conway v. City of Chicago*, 2025 WL 964304, at *3 (N.D. Ill. 2025). Morris's claims are predicated on disciplinary actions and the alleged denial of training opportunities, both of which are viewed as discrete job actions that are independently actionable and are not subject to the continuing violation doctrine. *See Barrett v. Ill. Dep't of Corr.*, 803 F.3d 893, 898 (7th Cir. 2015) (discrete job actions, such as disciplinary actions, are not subject to the continuing violation theory). *See also Billups-Dryer v. City of Harvey*, 2024 WL 4278016, at *5 (N.D. Ill. 2024) ("[t]he continuing violation doctrine does not delay the

accrual of claims arising from discrete acts that are independently actionable, however"). Each of these discrete acts accrues its own statute of limitations. *See Conway*, 2025 WL 964304, at *4 (retaliatory actions such as "disciplinary actions, suspensions," and removal from job responsibilities constitute "a discrete disciplinary action that was independently actionable."); *see also Vargas v. Cmmw. Edison Co.*, 2024 WL 1250151, at *5 (N.D. Ill. 2024) ("[s]uspensions from work are discrete acts.") (internal quotations omitted); *Owens–Floyd v. City of Chicago,* 2006 WL 2355573, at *3 (N.D. Ill. 2006) (finding that an employer's alleged discriminatory initiation of disciplinary proceedings was a discrete, discriminatory act); *Thomas v. Seal-Rite Door, Inc.*, 2020 WL 5820023, at *4 (N.D. Ill. 2020) ("[the plaintiff] cannot use his termination or the imposition of discipline between June and August 2018 as contributing acts to his hostile work environment claim; his termination and discipline are instead discrete adverse employment actions"); *Mokry v. Partylite Worldwide, Inc.*, 2009 WL 2588888, at *7 (N.D. Ill. 2009) ("[w]ith respect to claims regarding discrete employment actions, such as disciplinary actions and the failure to promote, [e]ach discrete discriminatory act starts a new clock for filing charges alleging that act.") (internal quotations omitted). Because the underlying conduct for Morris's claims are based on the lack of training or the amount of discipline he received or the amount of training he did not receive, both of Morris's expired claims are unsalvageable.

### III. Race Discrimination under Title VII or 42 U.S.C. § 1981

"Title VII prohibits workplace discrimination on the basis of race, 42 U.S.C. § 2000e–2(a), as well as employer retaliation against employees who oppose workplace discrimination, 42 U.S.C. § 2000e–3(a)." *Phillips v. Spencer*, 793 F. App'x 435, 438 (7th Cir. 2019). Section 1981 "prohibits racial discrimination in the making and enforcement of contracts." *Tanner v. City of Chicago*, 2021 WL 197422, at *5 (N.D. Ill. 2021). "A prima facie case of race discrimination under [Section] 1981 is predicated on the same elements as a race discrimination claim under Title VII." *Juniel v. Park Forest-Chicago Heights Sch. Dist. 163*, 176 F. Supp. 2d 842, 850 (N.D. Ill. 2001).

Morris's race discrimination claims can essentially be divided into two categories: the discrimination and harassment that occurred prior to Morris's September 2014 testimony and the treatment Morris received after his testimony. This timeline suggests that any Title VII or Section 1981 claims related to conduct that occurred prior to September 2014 are solely race discrimination claims. In accordance with our previous decision regarding the applicable statute of limitations, *see supra*, any race discrimination claim based on conduct falling outside of the statute of limitations are time-barred. Further, any claims related to Morris's testimony should be pursued as a retaliation claim, not a race discrimination claim. The only remaining viable race discrimination claims, then, are those related to adverse job actions that occurred within the statute of limitations.

11

Morris can support his race discrimination claims through a direct or indirect method of proof. *See Martino v. W. & S. Fin. Grp.*, 715 F.3d 195, 201 (7th Cir. 2013). Under the direct method, Morris must "provide either direct evidence or circumstantial evidence to prove that [the] employment decision was the result of discrimination." *Bluford v. Swift Transp.*, 2014 WL 4637158, at *5 (N.D. Ill. 2014). Under the indirect method, commonly referred to as the *McDonnell Douglas* burden-shifting method, Morris must establish that: (1) he is a member of a protected group; (2) he satisfied his employer's legitimate job expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside of the protected class were treated more favorably. *See Zayas v. Rockford Mem'l. Hosp.*, 740 F.3d 1154, 1157 (7th Cir. 2014). If these elements are met, the burden shifts to the defendant to introduce a legitimate, non-discriminatory reason for the employment action. *Id*. On rebuttal, the plaintiff must provide evidence demonstrating that the defendant's stated reason is pretextual. *Id*.

Morris has not offered any direct or circumstantial evidence that the adverse employment actions were motivated by racial discrimination. As such, we analyze his claims using the *McDonnell Douglas* framework. Here, the first element is not in dispute. However, Morris fails to make any arguments in relation to the remaining elements. *See United States v. Jones*, 224 F.3d 621, 626 (7th Cir.2000) (stating that "[a]rguments that are not adequately developed or supported are waived"). Moreover, even if Morris had offered enough evidence to make a prima facie case of discrimination, the claim would still fail under the burden-shifting framework because

the Railroad offered legitimate, non-discriminatory reasons for the disciplinary actions directed at Morris. Each disciplinary decision was predicated on rule violations. The only way Morris can overcome these proffered legitimate reasons is by showing that they are a pretext for discrimination. Morris fails to make such a showing. The only reference to pretext in the Response is Morris's claim that "[e]vidence has been submitted to demonstrate that the Railroad's belief that its actions from 2014 to present were [a] legitimate application of race neutral and non-retaliatory enforcement of its rules and regulations is highly suspect and disputed – especially in light of the highly unusual number of reversals and awards made in favor of Morris by the Public Board arbitrators." Dkt. # 68, 19. However, Morris does not direct the Court to such evidence.

Morris also failed to sustain a race discrimination claim based on the amount of training he received. "A denial of training can constitute an adverse employment action only if accompanied by loss of pay or benefits, demotion, or other indicators unique to the job." *See Nelson v. Idleburg*, 2020 WL 2061555, at *6 (N.D. Ill. 2020) (citing *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)). Morris has not stated that the lack of training he received resulted in the loss of compensation, seniority, or any measurable metric applicable to his position. As such, this claim also fails.

Even considering all of the evidence as a whole, Morris has failed to show that his race played a factor in the adverse employment conduct. *See Ortiz v. Werner Enters.,*

13

*Inc*. 834 F.3d 760, 766 (7th Cir. 2016). For these reasons, Morris's remaining race discrimination claims fail.

## IV. Race-Based Hostile Work Environment

A hostile work environment claim under Title VII requires proof of four elements: "(1) [the plaintiff] was subject to unwelcome harassment; (2) the harassment was based on his race; (3) the harassment was severe or pervasive so as to alter the conditions of the employee's work environment by creating a hostile or abusive situation; and (4) there is a basis for employer liability." *Cole v. Bd. of Trs. of N. Ill. Univ.*, 838 F.3d 888, 895–96 (7th Cir. 2016).

Morris's race-based hostile work environment claim fails because he has not connected the harassing conduct to his race. Morris states that the harassment started in retaliation for his testimony in the *Solomon* Matter. However, even though Morris's testimony consisted of his negative experiences as a black employee at the Railroad, being harassed because of his testimony is different than being harassed because of his race. A hostile work environment claim under Title VII on covers harassment that occurs because of one's membership in a protected class (e.g. race or sex). Morris has not pointed to any evidence that he was harassed because of his race alone. Therefore, to the extent that Morris brings a hostile work environment claim for the harassment he experienced because of his race alone, summary judgment is granted for Defendants.

V.     **Retaliation under Title VII**

Morris's remaining Title VII retaliation claims also fail, including is retaliatory hostile work environment claim.   Because Morris's hostile work environment claim is based on the increased amount of discipline he received in retaliation for his testimony, his hostile work environment claim is actually a retaliatory hostile work environment claim.  The Seventh Circuit has long recognized the existence of a retaliatory hostile work environment claim under Title VII.  *See Knox v. State of Ind.*, 93 F.3d 1327, 1334 (7th Cir. 1996).  To succeed on a retaliatory hostile work environment, claim under Title VII, Morris must prove that (1) his work environment was both objectively and subjectively offensive; (2) the harassment was in retaliation for protected behavior; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability. *Flanagan v. Off. of Chief Judge of Cir. Ct. of Cook Cnty., Ill.*, 893 F.3d 372, 375 (7th Cir. 2018).

However, the large time gap between Morris's 2014 testimony and the adverse conduct Morris complains of would require additional evidence to show that there was a causal nexus between them.  *See Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 (7th Cir. 2014) ("a retaliation claim can indeed be so bare-bones that a lengthy time period between the protected activity and the alleged retaliation will make any causal connection between the two implausible."); *see also Alamo v. Bliss*, 864 F.3d 541, 556 (7th Cir. 2017) ("An inference of retaliation can be weakened by a lengthy time period between the protected activity and the alleged retaliation.") (cleaned up).  Morris has

15

not provided any additional information which would support a finding of causation, which is necessary here considering the six-year time gap between the 2014 testimony and the January 2021 incidents. *See Longstreet v. Ill. Dep't. of Corr.,* 276 F.3d 379, 384 (7th Cir.2002) (holding that even had plaintiff shown an adverse action, a four-month proximity was insufficient to establish a causal connection); *see also Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C.*, 277 F.3d 882, 895 (7th Cir. 2001) (two-month period between presumed protected activity and discharge was insufficient to establish a causal connection between the two events). Accordingly, summary judgment is granted as Morris's Title VII retaliation claims.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment [49] is granted. Judgment is entered in favor of Defendants on all claims. Civil case terminated. It is so ordered.

Dated: 7/8/2025

_____
Charles P. Kocoras
United States District Judge